## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## NEWNAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | CRIMINAL ACTION FILE NO. |
| v. | : | 3:21-cr-00019-TCB-RGV |
| | : | |
| | : | |
| DAVID JOE HARVEY | : | |

## MAGISTRATE JUDGE'S REPORT, RECOMMENDATION, AND ORDER

Defendant David Joe Harvey ("Harvey") is charged in a three-count indictment with unlawful possession of a firearm and ammunition following a felony conviction, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(2); possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). [Doc. 1].[1] Harvey has filed a motion to suppress evidence, [Doc. 28], and after he perfected the motion, see [Doc. 32], the government filed a response, [Doc. 33], and a supplemental response, [Doc. 34], in

---

[1] The indictment also contains a forfeiture provision pursuant to 21 U.S.C. § 853. [Doc. 1 at 3-4]. The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

opposition to the perfected motion.  An evidentiary hearing on the perfected motion was held on August 12, 2022,[2] see [Doc. 36], and no further briefing was required as counsel offered oral argument at the conclusion of the evidentiary hearing, see (Tr. at 24-31).  For the reasons that follow, it is **RECOMMENDED** that Harvey's motion to suppress evidence, [Doc. 28], as perfected, [Doc. 32], be **DENIED**.

## I. FACTUAL BACKGROUND

On March 19, 2021, Georgia State Patrol ("GSP") Trooper Olen Kuhr ("Trooper Kuhr") was traveling north on Interstate I-85 in a marked patrol vehicle when he noticed a Dodge Ram truck approaching from behind at a high rate of speed. (Tr. at 4, 6).  Trooper Kuhr visually estimated that the truck was traveling at 90 miles per hour, and his rear antenna radar confirmed that estimate. (Tr. at 6).  As the truck passed his patrol vehicle, Trooper Kuhr's front antenna radar indicated that it was traveling at 86 miles per hour. (Id.).  Trooper Kuhr activated his emergency equipment to initiate a traffic stop for speeding, and as the truck was in front of him, he could smell the odor of burnt marijuana, which he had not smelled before the truck passed him. (Id.).  After Trooper Kuhr activated his

---

[2] See [Doc. 38] for the transcript of the evidentiary hearing.  Citations to the evidentiary hearing transcript hereinafter will be referred to as "(Tr. at __)."

emergency equipment, the truck pulled over to the shoulder of I-85, just north of the Exit 56 overpass bridge, and came to a stop in the gore next to the northbound entrance ramp of Exit 56. (Tr. at 8).

Trooper Kuhr parked his patrol vehicle behind the truck in the gore, exited his vehicle, and approached the driver of the truck. (Tr. at 7-9). Trooper Kuhr again smelled the odor of burnt marijuana after he stopped the truck. (Tr. at 9). The driver, Harvey, identified himself by presenting his State of Georgia issued driver's license. (Tr. at 9-10). Because Trooper Kuhr smelled the odor of burnt marijuana after stopping the truck, he asked Harvey to exit the truck, and they walked to the back of the truck because Trooper Kuhr intended to conduct a standard field sobriety test, and he patted Harvey down for weapons for officer safety before administering the test as he suspected that Harvey was under the influence of marijuana and did not know if he had a weapon. (Tr. at 10-11, 21). During the pat down, Trooper Kuhr felt an object in the front of Harvey's pants, to the left of his groin area, and he asked Harvey to face away from him because he intended to detain him. (Tr. at 11-12). At that point, Harvey fled from the scene of the stop toward the east, crossed over the Exit 56 entrance ramp, and entered the woods. (Tr. at 12). Trooper Kuhr chased Harvey, but he was not able to apprehend him, so he contacted dispatch to request assistance, and several other

3

law enforcement agencies responded to the scene and established a perimeter. (Tr. at 13). The Coweta County Sheriff's Department deployed canines and a drone to search for Harvey and located him after approximately one hour. (Id.).

Once other officers were on the scene searching for Harvey, Trooper Kuhr returned to the scene of the traffic stop to secure the truck. (Id.). Since Harvey was the only occupant of the truck that he had abandoned, and it presented a safety hazard where it was parked in the gore next to northbound traffic on I-85 and the Exit 56 entrance ramp, Trooper Kuhr decided to have it towed. (Tr. at 14). Trooper Kuhr explained that the truck was blocking the view of vehicles merging onto the interstate from the Exit 56 entrance ramp since it was parked in the gore, and it also presented a hazard to vehicles traveling northbound on I-85, particularly if it remained there at night. (Id.). Pursuant to GSP policy, Trooper Kuhr conducted an inventory of the truck and called for a wrecker to tow it away. (Tr. at 14-15). Trooper Kuhr found contraband in the truck during the inventory, and once Harvey was located, he was arrested for DUI, speeding, and possession of drugs and a gun. (Tr. at 16).

On October 26, 2021, a grand jury in the Northern District of Georgia returned an indictment, charging Harvey with unlawful possession of a firearm and ammunition following a felony conviction, in violation of 18 U.S.C. §§

4

922(g)(1) and 924(e)(2), possession with intent to distribute heroin, methamphetamine, and cocaine, in violation of 21 U.S.C. § 841(a)(1), and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). [Doc. 1]. Harvey moves to suppress the evidence recovered from the warrantless search of his truck, [Docs. 28 & 32], which the government opposes, [Docs. 33 & 34]. For the reasons that follow, it is **RECOMMENDED** that the motion to suppress, [Doc. 28], as perfected, [Doc. 32], be **DENIED**.

## II.  DISCUSSION

In his perfected motion, Harvey "moves to suppress all evidence seized by law enforcement pursuant to a search of his vehicle without a warrant, without a valid exception to the warrant requirement, and in violation of his Fourth Amendment and Georgia state constitutional rights." [Doc. 32 at 1]. During oral argument after the evidentiary hearing, Harvey's counsel challenged the pat down search of Harvey, arguing that Trooper Kuhr did not have articulable suspicion that Harvey was armed and dangerous and therefore evidence seized from the truck should be suppressed as fruit of the poisonous tree of the unlawful pat down. (Tr. at 24-25). Harvey's counsel also disputed that Harvey abandoned the truck since it was parked in the gore and not blocking traffic, (Tr. at 25-26), and further asserted that there was no need to tow the truck from that location, and

therefore, the inventory search was not necessary, (Tr. at 27-28). Harvey's counsel also argued that Trooper Kuhr did not have probable cause to search the truck based on having smelled the odor of marijuana. (Tr. at 26-27). The government responded that Trooper Kuhr lawfully performed a pat-down search incident to having probable cause to search the vehicle based on smelling burnt marijuana as he approached the truck following the traffic stop and prior to conducting the field sobriety test he intended to administer before Harvey fled from the scene. (Tr. at 31). He also argued that Harvey clearly abandoned any interest in the truck when he ran from the scene into the woods, leaving the truck parked alongside the interstate, and that Trooper Kuhr lawfully conducted an inventory search of the truck incident to impounding it pursuant to GSP policy because Harvey had abandoned the truck, there was no one to drive it away, and it presented a danger to motorists driving on I-85 and using the Exit 56 entrance ramp where it was parked in the gore. (Tr. at 29-30).

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, by means of physical force or show of

authority, terminates or restrains his freedom of movement, through means intentionally applied."  Brendlin v. California, 551 U.S. 249, 254 (2007) (emphasis, citations, and internal marks omitted); see also Michigan v. Chesternut, 486 U.S. 567, 573 (1988) (citation and internal marks omitted) (noting that an individual's Fourth Amendment right is implicated when he is no longer "free to leave"); Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968) ("Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."); United States v. Mitchell, 407 F. App'x 407, 409 (11th Cir. 2011) (per curiam) (unpublished).  "[T]o determine whether a particular encounter constitutes a seizure, a court must consider all of the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." Florida v. Bostick, 501 U.S. 429, 439 (1991); see also United States v. Hunter, 373 F. App'x 973, 976 (11th Cir. 2010) (per curiam) (unpublished).  The Eleventh Circuit has further explained that a person is "seized" when "a reasonable person would [not] feel free to terminate the encounter" with the police.  Miller v. Harget, 458 F.3d 1251, 1257 (11th Cir. 2006) (citations and internal marks omitted).  However, a show of authority by the police to which the subject does not yield is insufficient.

7

California v. Hodari D., 499 U.S. 621, 625-29 (1991).  Indeed, "[a]bsent the use of physical force, a seizure requires both a show of authority and '*submission* to [that] assertion of authority.'"  United States v. Dolomon, 569 F. App'x 889, 892 (11th Cir. 2014) (per curiam) (unpublished) (second alteration in original) (quoting Hodari D., 499 U.S. at 626).

Harvey does not dispute that Trooper Kuhr lawfully stopped him for speeding on I-85, see [Docs. 28 & 32]; (Tr. at 24-28), as his radar indicted that Harvey was traveling at a speed of 90 miles per hour, when the speed limit was 70 miles per hour, (Tr. at 6, 14).  After Harvey's truck passed his patrol vehicle, Trooper Kuhr first noticed the smell of burnt marijuana, and he again smelled burnt marijuana after making the traffic stop.  (Tr. at 6, 9).  Trooper Kuhr lawfully ordered Harvey to exit the vehicle incident to the traffic stop as he intended to administer a standard field sobriety test based on the smell of burnt marijuana emanating from the truck.  (Tr. at 10-11, 21).  Prior to administering the test, Trooper Kuhr patted Harvey down for officer safety reasons to determine if he had a weapon.  (Id.).  Harvey contends that a protective search for weapons in the absence of probable cause to arrest is valid only when the officer has an articulable suspicion that an individual is armed and dangerous and that Trooper Kuhr did

not have articulable suspicion that Harvey was armed and dangerous as he testified only that he frisked Harvey for weapons for officer safety.  (Tr. at 24-25).

"An officer may conduct a pat-down search of a driver or a passenger during a lawful traffic stop when the officer 'harbor[s] reasonable suspicion that the person subjected to the frisk is armed and dangerous.'"  Giddens v. Brooks Cnty., No. 21-11755, 2022 WL 836273, at *5 (11th Cir. Mar. 21, 2022) (quoting Arizona v. Johnson, 555 U.S. 323, 327 (2009)).  "Reasonable suspicion does exist when 'a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'"  Id. (quoting Terry, 392 U.S. at 27).  The Eleventh Circuit has "concluded that reasonable suspicion exists to support a pat-down search of a driver during a traffic stop when (1) officers smelled marijuana and alcohol coming from the car and (2) 'the driver argued with [the officer] at the initiation of the stop.'"  Id. (quoting United States v. Knight, 562 F.3d 1314, 1327 (11th Cir. 2009) (involving a traffic stop for failure to wear a seatbelt)).  And, an individual who is lawfully removed from a vehicle during a traffic stop "may be patted down for weapons if the officer has reason to believe that his own safety or the safety of others is at risk." United States v. Burwell, 763 F. App'x 840, 850–51 (11th Cir. 2019) (per curiam) (unpublished) (citing Pennsylvania v. Mimms, 434 U.S. 106, 112 (1977)).

The Supreme Court has recognized "that traffic stops are especially fraught with danger to police officers." Johnson, 555 U.S. at 330 (citation and internal marks omitted).  In this case, Trooper Kuhr stopped Harvey for speeding at 90 miles per hour, which was 20 miles per hour over the speed limit, (Tr. at 6, 14), and he detected an odor of burnt marijuana when Harvey's truck passed him on the interstate and again after making the traffic stop, (Tr. at 6, 9).  Under these circumstances, he reasonably believed that Harvey may be under the influence of marijuana and intended to administer a standard field sobriety test to him. Accordingly, Trooper Kuhr lawfully ordered Harvey to exit the truck, and for his own safety, patted down Harvey to determine if he had any weapons prior to beginning the field sobriety test as the two men stood beside the interstate, which was reasonable under the totality of the circumstances and did not violate Harvey's Fourth Amendment rights.  United States v. Corley, 408 F. App'x 245, 247 (11th Cir. 2011) (per curiam) (unpublished) (holding that deputies had reasonable suspicion to justify their instruction to driver to exit the motor vehicle and to conduct pat down of driver, following valid traffic stop, where the deputies smelled marijuana when they approached the vehicle); United States v. Clark, No. 20-CR-213 (MJD/LIB), 2021 WL 5310995, at *8 (D. Minn. Sept. 17, 2021), (because trooper "had a reasonable suspicion that [d]efendant was impaired and may be

10

involved with the use of drugs," a <u>Terry</u> pat-down for safety was constitutionally permitted under the circumstances), adopted by 2021 WL 5310708 (D. Minn. Nov. 15, 2021).   However, even if Trooper Kuhr's pat down of Harvey was not supported by reasonable suspicion, Harvey's argument that evidence subsequently recovered from his truck should be suppressed as fruit of the poisonous tree is without merit because his flight from the scene and abandonment of the truck were intervening circumstances that purged the taint of the alleged illegal pat-down search.   <u>See</u> <u>United States v. Hickson</u>, 632 F. App'x 584, 584 (11th Cir. 2016) (per curiam) (unpublished) (citation omitted) (finding defendant's behavior, which included fleeing the traffic stop and abandoning contraband, purged any taint of an unlawful invasion and that the abandoned drugs "could not be classified as 'fruit of the poisonous tree'"); <u>see also</u> <u>United States v. Hardy</u>, No. CR08-0077, 2009 WL 29654, at *2 (N.D. Iowa Jan. 5, 2009), adopted by 2009 WL 1687955 (N.D. Iowa June 17, 2009), <u>aff'd</u>, 375 F. App'x 658 (8th Cir. 2010) (per curiam) (unpublished).

Harvey next argues that Trooper Kuhr unlawfully searched the truck after he ran from the scene, disputing that he abandoned the truck since it was parked in the gore and not blocking traffic on I-85.   (Tr. at 25-26).   To establish that the government conducted an unconstitutional search under the Fourth Amendment,

a defendant must show that "'(1) he has a subjective expectation of privacy, and (2) society is prepared to recognize that expectation as objectively reasonable.'" United States v. Bushay, 859 F. Supp. 2d 1335, 1361 (N.D. Ga. 2012) (quoting United States v. Harris, 526 F.3d 1334, 1338 (11th Cir. 2008) (per curiam)), adopted at 1354; see also California v. Ciraolo, 476 U.S. 207, 211 (1986) (citation omitted) (explaining that standing to challenge a search under the Fourth Amendment requires a subjective expectation of privacy that society would recognize as legitimate); United States v. Lowry, 315 F. App'x 214, 215 (11th Cir. 2008) (per curiam) (unpublished) (citation omitted); United States v. Baron-Mantilla, 743 F.2d 868, 870 (11th Cir. 1984) (per curiam) (citation omitted).  Thus, "a defendant must establish both a subjective and an objective expectation of privacy,"[3] and he "bears the burden of showing a legitimate expectation of privacy in the area searched." United States v. Suarez-Blanca, Criminal Indictment No. 1:07–CR–0023–

---

[3] "The subjective prong is a factual inquiry, and requires that a person exhibit an actual expectation of privacy," while the "objective prong is a question of law, and requires that the privacy expectation be one that society is prepared to recognize as reasonable." Bushay, 859 F. Supp. 2d at 1362 (citations and internal marks omitted); see also United States v. Durdley, 436 F. App'x 966, 968 (11th Cir. 2011) (per curiam) (unpublished) (citation omitted).  "An expectation of privacy is reasonable if it has a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." United States v. Dixon, 901 F.3d 1322, 1338 (11th Cir. 2018) (citation and internal marks omitted).

MHS/AJB, 2008 WL 4200156, at *6 (N.D. Ga. Apr. 21, 2008) (citations omitted); <u>see</u> <u>also</u> <u>United States v. Sneed</u>, 732 F.2d 886, 888 (11th Cir. 1984) (per curiam) (holding that it is the defendant's burden to establish a legitimate expectation of privacy); <u>United States v. Jefferson</u>, Criminal Case No. 1:09–CR–324–WSD–RGV, 2010 WL 3928049, at *4 (N.D. Ga. May 25, 2010) (citation omitted) ("In other words, [defendant] has the burden to establish that he has standing to challenge the search or seizure."), adopted by 2010 WL 3927874, at *9 (N.D. Ga. Oct. 4, 2010), <u>aff'd</u>, 451 F. App'x 833 (11th Cir. 2011) (per curiam) (unpublished). A defendant cannot rely on general, conclusory, or vague assertions to establish standing. <u>United States v. Cooper</u>, 203 F.3d 1279, 1284 (11th Cir. 2000) (citation omitted); <u>United States v. Richardson</u>, 764 F.2d 1514, 1527 (11th Cir. 1985) (citation omitted).

"One who voluntarily abandons personal property in the Fourth Amendment sense abandons one's reasonable expectation of privacy in that property and cannot challenge the constitutionality of its subsequent search or seizure." <u>United States v. Anderson</u>, 754 F. Supp. 442, 443 (E.D. Pa. 1990) (citations omitted); <u>see also</u> <u>United States v. Stevenson</u>, 396 F.3d 538, 546 (4th Cir. 2005) (citations omitted); <u>United States v. Tinoco</u>, 304 F.3d 1088, 1117 (11th Cir. 2002) (citations omitted); <u>United States v. Cofield</u>, 272 F.3d 1303, 1306 (11th Cir. 2001) (per curiam) (citations omitted) ("[A]n individual who abandons or denies

ownership of personal property may not contest the constitutionality of its subsequent acquisition by the police."); United States v. Collis, 766 F.2d 219, 222 (6th Cir. 1985) (per curiam) (citations omitted); United States v. Edwards, 644 F.2d 1, 2 (5th Cir. Unit B 1981) (per curiam) (citations omitted); United States v. Cruz, No. 5:06-CR-95(WDO), 2007 WL 781866, at *5 (M.D. Ga. Mar. 13, 2007). "Abandonment is akin to the issue of standing because a defendant lacks standing to complain of an illegal search or seizure of property which has been abandoned." United States v. Quintana-Grijalva, 332 F. App'x 487, 491-92 (10th Cir. 2009) (unpublished) (citation and internal marks omitted); see also Pineda v. Warden, Calhoun State Prison, 802 F.3d 1198, 1204 (11th Cir. 2015) ("[A] person can abandon his possessory interest in a way that eliminates his standing to challenge a search.").

"The abandonment of one's privacy interest is primarily a question of intent and is determined objectively." Anderson, 754 F. Supp. at 443-44 (citation omitted). "The intent may be inferred from words spoken, acts done, and the relevant circumstances existing at the time of the alleged abandonment." Id. at 444 (citing United States v. Colbert, 474 F.2d 174, 176 (5th Cir. 1973)[4]). In United

---

[4] Decisions of the Fifth Circuit rendered before October 1, 1981, are binding upon panels of the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

States v. Sparks, 806 F.3d 1323, 1341 (11th Cir. 2015), the Eleventh Circuit explained that a commonsense approach should be used when evaluating abandonment. Id. at 1342 (citation omitted). The Court must "assess objectively whether abandonment has occurred, based primarily on the prior possessor's intent, as discerned from statements, acts, and other facts." Id. (citation omitted). "Police pursuit or the existence of a police investigation does not of itself render the abandonment involuntary." Id. (citation omitted); see also United States v. Segars, 31 F.3d 655, 658 (8th Cir. 1994) (citation omitted); United States v. Gibbs, CRIMINAL ACTION NO. 1:17-CR-00207-CAP-CMS-1, 2018 WL 6331341, at *4 (N.D. Ga. Dec. 4, 2018) (citation omitted).

Courts repeatedly have held that when an individual flees from the police and in the process leaves behind an item inside a vehicle, he has abandoned any interest in that item for Fourth Amendment purposes. See, e.g., United States v. Edwards, 441 F.2d 749, 750-51 (5th Cir. 1971) (finding that the defendant abandoned his reasonable expectation of privacy to property inside a vehicle when he exited the vehicle, leaving the lights and engine on, and fled from police on foot); United States v. Turner, Case No. 8:18-cr-80, 2019 WL 2287967, at *2-3 (M.D. Fla. May 29, 2019) (concluding that defendant did not have standing to challenge the search because he abandoned the cell phone in a vehicle when fleeing from

law enforcement); <u>United States v. Williams</u>, CR418-147, 2019 WL 1612833, at *4-5 (S.D. Ga. Feb. 27, 2019) (same).

Harvey relies on <u>State v. Nesbitt</u>, 699 S.E.2d 368 (Ga. Ct. App. 2010), to argue that he did not abandon his truck by leaving it parked in the gore when he ran from the scene of the traffic stop.   [Doc. 32 at 2-3]; (Tr. at 25-26).   However, Harvey's reliance on <u>Nesbitt</u> is misplaced.   In <u>Nesbitt</u>, an officer initiated a traffic stop of Nesbitt's vehicle, and Nesbitt turned into an apartment complex parking lot and pulled the vehicle "not completely forward into [a] parking space and kind of sideways between [an] SUV and another car."   699 S.E.2d at 371-72.   Nesbitt then exited the vehicle, leaving the car door open, and ran from the scene.   <u>Id.</u>   at 29.   The officer lost sight of Nesbitt and subsequently searched the car without a warrant or consent and seized several items of evidence.   <u>Id.</u>

Nesbitt moved to suppress all evidence seized after the car was stopped, and the trial court granted the motion, <u>id.</u>   at 370, ruling that the stop of Nesbitt's car was not supported by reasonable, articulable suspicion, <u>id.</u>   The state sought reconsideration of the ruling, arguing that Nesbitt abandoned any privacy interest in the car by fleeing from the officer, but the trial court denied the motion for reconsideration.   <u>Id.</u> at 371.   The state appealed, arguing only that Nesbitt had abandoned any interest in the car by fleeing from the scene, <u>id.</u> at 371-72, but the

Georgia Court of Appeals affirmed the trial court's ruling, declining "to hold that flight on foot by a driver (and passengers, if any) from a vehicle recently pursued by the police automatically justifies a search of that vehicle," id. at 373. The Court of Appeals distinguished the facts of Nesbitt's case from situations in which "the driver (and passengers, if any) fled a motor vehicle illegally parked or parked in a hazardous manner," where "courts have treated the vehicle as abandoned for Fourth Amendment purposes." Id. at 732. The Court of Appeals explained that Nesbitt had parked his vehicle in a parking space of an apartment complex where he lived, so the evidence "did not demand a finding that Nesbitt fled a car that was illegally parked or parked in some hazardous manner." Id. at 373.

The facts in Nesbitt are readily distinguishable from the circumstances of this case. First, it is undisputed that Trooper Kuhr lawfully stopped Harvey for speeding, whereas in Nesbitt, the trial court ruled that the officer did not have articulable, reasonable suspicion to stop Nesbitt, id. at 370, and the state did not contest that ruling on appeal, and instead relied exclusively on the abandonment argument, id. at 371. Thus, Nesbitt did not run away from a lawful encounter with a law enforcement officer, leaving his vehicle parked illegally or in a hazardous manner, which the Georgia Court of Appeals explained has been a hallmark in cases where courts have found abandonment of interest in property left behind by

the fleeing subject.  Id. at 372.  Moreover, the location of the stop was materially different in Nesbitt, where the car was parked in a parking space at an apartment complex where the defendant lived.  Id. at 373.  Here, Harvey left his truck parked on the side of the interstate when he ran into the woods, fleeing from the lawful traffic stop after Trooper Kuhr detected a suspicious object in the front of his pants. (Tr. at 11-12).  Thus, Harvey's truck was not lawfully parked on private property, as in Nesbitt, but alongside I-85 in the gore, where it could not safely remain because it presented a hazard to motorists traveling on and entering the interstate. (Tr. at 14).

By fleeing from the scene of the lawful traffic stop, Harvey voluntarily relinquished any reasonable expectation of privacy in the truck and its contents, and he thus lacks standing to oppose the subsequent search and seizure of evidence from the truck.  See Edwards, 441 F.2d at 751-53 (finding defendant had no expectation of privacy in car he abandoned by fleeing from police on foot); United States v. Hunter, Criminal File No. 1:07-CR-310-1-TWT, 2008 WL 552881, at *7 n.6 (N.D. Ga. Feb. 25, 2008) (noting that items seized from vehicle would be admissible because defendant abandoned his interest in vehicle when he fled from it following a police chase), adopted at *1; see also United States v. Kirlew, 291 F. App'x 536, 538 (4th Cir. 2008) (per curiam) (unpublished) (citation and internal

marks omitted) (finding defendant abandoned vehicle when he jumped out of it and fled on foot, stating that "abandonment may be found where a fleeing defendant relinquishes an object to make his flight easier"); United States v. Lewis, No. CR 08-1136-FRZ-JCG, 2009 WL 1856643, at *6 (D. Ariz. June 29, 2009) (finding defendant who fled from vehicle that did not belong to him manifested intention to abandon it), adopted at *1; United States v. Noble, No. 07 Cr. 284(RJS), 2008 WL 1990707, at *6 (S.D.N.Y. May 7, 2008) (citation omitted) (finding defendant abandoned vehicle when he crashed it on the side of the road and fled on foot); United States v. Muhammad, 554 F. Supp. 2d 1314, 1320 (M.D. Fla. 2008) (finding that because defendant "abandoned the firearm before he was seized," he did "not have standing to contest the seizure of the abandoned property"), adopted at 1316; United States v. Lawrence, Criminal No. 06-83, 2007 WL 925893, at *3 (E.D. Pa. Mar. 16, 2007) (finding defendant abandoned vehicle when he ran away from it); United States v. Welch, No. CRIM.05-50111, 2006 WL 2666307, at *2 (W.D. La. Sept. 15, 2006) (citation omitted) ("Defendant has no standing to complain about the search of property that he has voluntarily abandoned."), adopted at *1; United States v. Libbett, No. 05-CR-60692, 2006 WL 2620049, at *10 (W.D.N.Y. Sept. 13, 2006) (footnote and citations omitted) ("[The defendant] fled on foot, leaving the driver's door open and the engine running.  [The defendant's] flight constituted

an abandonment of the automobile, and concomitant abandonment of any expectation of privacy he may have had in the vehicle."), adopted at *2; United States v. Lynch, 290 F. Supp. 2d 490, 494-97 (M.D. Pa. 2003) (stating that "abandonment would be sufficient reason" for the court to deny defendant's suppression motion where he fled from his vehicle, "leaving the driver's door open and the motor running," after ramming a police cruiser).  Because he abandoned any privacy interest that he may have had in the truck, Harvey does not have standing to challenge the seizure of evidence from it, and his motion to suppress is due to be denied.

Even if Harvey had not abandoned any privacy interest that he may have had in the truck, his motion to suppress evidence would still fail because Trooper Kuhr lawfully impounded the truck and inventoried it pursuant to GSP policy. (Tr. at 14-15).  In South Dakota v. Opperman, 428 U.S. 364, 376 (1976), the Supreme Court held that police impoundment and search of vehicles pursuant to the department's standard operating procedure ("SOP") do not violate the Fourth Amendment.  The Eleventh Circuit, in Sammons v. Taylor, 967 F.2d 1533 (11th Cir. 1992), defined the framework of the inventory-search exception to the warrant requirement as follows:

> Even if an arrestee's vehicle is not impeding traffic or otherwise presenting a hazard, a law enforcement officer may impound the

vehicle, so long as the decision to impound is made on the basis of standard criteria and on the basis of something other than suspicion of evidence of criminal activity.[5]  If the vehicle has been lawfully impounded, the law enforcement officer may conduct an inventory search, including a search of closed containers, provided the search is conducted pursuant to standardized criteria.  Because an inventory search is an exception to the Fourth Amendment's warrant requirement, however, the government officer has the burden to show that the requirements of the inventory search exception have been met.

Id. at 1543 (footnote added) (internal marks omitted) (citing Coolidge v. New Hampshire, 403 U.S. 443, 455 (1971)).   Therefore, "[i]nventory searches are appropriate where police have the authority to impound a vehicle and the search is consistent with established policy."   United States v. Davis, No. 2:07-cr-0248-WKW, 2008 WL 1927377, at *3 (M.D. Ala. Apr. 28, 2008) (citing United States v. Williams, 936 F.2d 1243, 1248 (11th Cir. 1991)), adopted at *2; see also United States v. Westerman, 418 F. App'x 822 (11th Cir. 2011) (per curiam) (unpublished); United States v. Lariscy, No. CR607-10, 2008 WL 621216, at *4 (S.D. Ga. Mar. 4, 2008) (citing Colorado v. Bertine, 479 U.S. 367, 372 (1987); Williams, 936 F.2d at 1248) ("It is well settled that police officers may conduct inventory searches of vehicles lawfully in their custody provided the inventory is conducted pursuant

---

[5] "At the same time, the mere expectation of uncovering evidence will not vitiate an otherwise valid inventory search."  Shirley, 2010 WL 5390138, at *13 (internal marks and citations omitted).

to standardized government procedures."). "The Supreme Court and lower federal courts have strictly adhered to the requirement that, for a search to be justified as an inventory, there must be a standard inventory policy, and the officer's conduct must not exceed that which is allowed under the policy." Shirley, 2010 WL 5390138, at *14 (citations omitted). "Generally, 'reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment.'" United States v. Richardson, 121 F.3d 1051, 1055 (7th Cir. 1997) (quoting Bertine, 479 U.S. at 374).

"Three interests justify this exception, namely (1) protection of the owner's property found in the vehicle, (2) protection of the police from false claims of lost possessions, and (3) protection of the police from potential danger." United States v. Wright, Criminal Action No. 2:07cr91-MHT, 2007 WL 4287803, at *3 (M.D. Ala. Nov. 30, 2007), adopted at *1; see also United States v. Grossman, 233 F. App'x 963, 968 (11th Cir. 2007) (per curiam) (unpublished); United States v. Beckford, No. 1:09-CR-263-TWT-GGB, 2010 WL 1487817, at *4 (N.D. Ga. Feb. 2, 2010), adopted in part at 2010 WL 1489970, at *1 (N.D. Ga. Apr. 13, 2010). An inventory search is also lawful even though it may be an investigatory search, "so long as [the inventory] was *one* of the police motives." United States v. Orozco, 715 F.2d 158, 161 (5th Cir. 1983) (per curiam); see also Shirley, 2010 WL 5390138, at *14 ("[A]

22

number of courts have ruled that the presence of dual motivation does not invalidate an otherwise valid inventory search.").

Trooper Kuhr testified, without any contradiction or dispute by Harvey, that he impounded and inventoried the truck Harvey abandoned in the gore pursuant to GSP impound and inventory policy. (Tr. at 14-15, 17). Trooper Kuhr testified about the standard manner in which he conducted the inventory, which he completed before the tow truck arrived on the scene. (Tr. at 15-17). Because GSP policy required that an inventory of an impounded vehicle be conducted, and Trooper Kuhr "acted pursuant to that policy . . . the search[ ] of the [truck was a] lawful inventory search[ ]." Beckford, 2010 WL 1487817, at *4; see also Walker, 900 F.2d at 1205 (finding warrantless search of vehicle after it was seized for forfeiture was a valid inventory search where agent testified that it was conducted pursuant to department policy that requires a complete inventory of the contents of impounded vehicles).

The only arguments Harvey makes about the inventory search is that it was unnecessary because the truck was parked in the gore and not impeding traffic so it did not have to be towed, and Trooper Kuhr could have asked Harvey once he was arrested if someone could come to the scene to drive the truck away instead of impounding it. (Tr. at 27-28). These arguments are without merit. Trooper

Kuhr clearly explained in his testimony that the truck presented a hazard to motorists traveling on I-85 where it was parked in the gore for at least two reasons. (Tr. at 14, 18).  First, because it was parked within one foot of the travel lane, it presented a hazard for vehicles traveling northbound on I-85 at 70 miles per hour, should a vehicle swerve or enter the gore where the truck was parked.  (Tr. at 18). It also presented a hazard for vehicles using the Exit 56 entrance ramp to I-85 because it blocked the view of drivers as they were merging with traffic on the interstate.  (Tr. at 14, 18).  So, although it may not have been physically blocking the flow of traffic, it clearly presented a hazard to motorists using I-85, and Trooper Kuhr testified that it was GSP policy to impound and remove vehicles from the interstate when someone was arrested, as was the case with Harvey.  (Tr. at 17-18). Trooper Kuhr also testified that, pursuant to GSP policy, "if someone is leaving and going to jail, we don't leave their vehicle[] on the interstate" because it could be broken into or stolen.  (Tr. at 18).

As for Harvey's contention that Trooper Kuhr could have asked him if there was any one he could call to drive the truck away, Trooper Kuhr was not able to ask Harvey when he made the decision to impound the truck since he had run into the woods and was not on the scene when Trooper Kuhr initiated the impoundment and inventory of the truck while other officers were searching for

Harvey in the woods, and no one was on the scene to drive the truck away.[6]  (Tr. at 13-16).  "Moreover, the police are not required to allow a driver of a vehicle to make alternative arrangements in lieu of impounding the vehicle or to apply less intrusive means to securing a vehicle."  United States v. Coleman, No. 1:18-CR-00484-ELR-JFK, 2020 WL 5229042, at *8 (N.D. Ga. Jan. 14, 2020), adopted by 2020 WL 2538931 (N.D. Ga. May 18, 2020); United States v. Dennis, CASE NO. 5:17-cr-22-16(MTT), 2018 WL 2994665, at *4 (S.D. Ga. June 14, 2018) (finding that, "[e]ven if, as [the defendant] argues, it may have been safe to leave the car where it was parked, that other less intrusive means, besides impoundment, could have been employed to prevent theft and ensure public safety does not necessarily render the decision to impound the vehicle unreasonable").

---

[6] The government also argues that Trooper Kuhr had probable cause to search the truck based on having smelled the odor of marijuana emanating from the truck after he stopped Harvey. (Tr. at 29).  However, since the record clearly establishes that Harvey abandoned any interest in the truck by fleeing from the scene of the lawful traffic stop and Trooper Kuhr lawfully impounded the abandoned vehicle pursuant to GSP policy, the Court need not discuss this argument in detail, but finds that Trooper Kuhr credibly testified that he smelled the odor of burnt marijuana when Harvey's truck passed him on the interstate and again after he stopped the truck, (Tr. at 6, 9), which gave him probable cause to search the truck for evidence of contraband.  See United States v. Hodges, No. 5:07-CR-55 (WDO/HL), 2007 WL 3027360, *1 (M.D. Ga. Oct. 15, 2007); United States v. Ferguson, No. 2:07-cr-25-WKW, 2007 WL 2746759, *3 (M.D. Ala. Sep. 20, 2007); United States v. Hamilton, No. CR407-122, 2007 WL 2582233, *3 (S.D. Ga. Aug. 31, 2007); United States v. Hernandez-Arellano, No. 2:06-cr-147-WKW, 2006 WL 2864406, *4 (M.D. Ala. Oct. 5, 2006).

## III.   CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Harvey's perfected motion to suppress evidence, [Docs. 28 & 32], be **DENIED**.

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, certified Ready for Trial.

**IT IS SO ORDERED** and **RECOMMENDED**, this 7th day of October, 2022.

_Russell G. Vineyard_
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE